**Ralph THRIFT et al., Appellants,**

**v.**

**Whorton JOHNSON, Appellee.**

**No. 16974.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Dec. 29, 1977.

Austin & Arnett, Donald R. Arnett, Cary V. Sorensen, Houston, for appellants.

Charles V. Bialkowski, Houston, for appellee.

COLEMAN, Chief Justice.

This is an appeal from a judgment for the plaintiff in a suit to recover security deposits paid to the lessor in accordance with the terms of a lease agreement, and for statutory penalties and attorney's fees. The issues involved require the application of Article 5236e (Supp.1976), Tex.Rev.Civ.Stat.Ann. The case was tried to a jury and the judgment was entered on the jury verdict.

In 1974 Whorton Johnson, the plaintiff, entered into a six month lease for an apartment at the Shibui Apartments. In 1975 he entered into a six month lease for an apartment at the Willow Valley Apartments. Both of these apartments were under the same management and the lease form used in each case was the same although certain changes were written into the second lease. The plaintiff terminated both leases before the dates specified in the leases, and the owner refused to return the $50.00 security deposits paid under the terms of each of the leases.

The rental contract provided for a rental in the sum of $160.00 per month and for a security deposit in the sum of $50.00. It provided that "refund shall be made in accordance with the attached security deposit agreement." Paragraph 16 of the rental agreement provides:

"If resident fails to vacate on or before the expiration or termination date, resident's deposit will be forfeited and owner shall be entitled to triple rents for the holdover period, plus any damages such as loss of prospective residents, plus attorneys fees. If resident attempts to remove his property from the apartment in contemplation of moving therefrom prior to the end of the contract term, then all monthly rentals which are payable during the remainder of the term shall be accelerated automatically without notice and shall be immediately due and payable

(same as acceleration upon default of a home mortgage payment). Owner shall use diligence to relet the apartment, and all subsequent rentals received by the owner in mitigation of damages (less costs of reletting) shall be credited to such indebtedness and/or judgment or shall be refunded to the resident, whichever is appropriate. Even if the apartment is relet without any loss of rentals, resident's deposit will be forfeited as liquidated damages for owner's effort, inconvenience, and administrative costs in reletting the apartment, which forfeiture shall not affect or diminish owner's other rights or remedies under this contract."

Paragraph 17 of the lease provides generally that the resident will not be released from the terms of the contract on grounds of voluntary or involuntary business transfer unless otherwise agreed to in paragraph 21, which in the form is a blank area for the insertion of special provisions. There is a provision that in the event the resident is or becomes a member of the Armed Forces on extended active duty and receives change-of-duty orders to depart the local area the resident may terminate the rental contract by giving 30 days written notice. In that event resident agrees to furnish owner a certified copy of the official orders which warrant termination of the rental contract. This paragraph was modified in the second lease agreement by this provision inserted in paragraph 21:

"7 days notice required on move out. # 17 amended by letter from Aztex Eng. Co. showing intent of transfer out of town sufficient for release from lease and return of deposit."

The Security Deposit Agreement attached to each of the rental contracts provides that the rental deposit "shall be returned to resident only if certain conditions are met." The first condition is that the full term must have expired or terminated without default by the resident. The second is that 30 days written notice must have been given to owner's representative prior to the date of termination or expiration. In the second lease this provision has been stricken and the notation inserted "see # 21 on lease."

The evidence establishes that the plaintiff failed to give the required notice before he vacated the premises covered by the first lease. The 1975 lease (the second lease) was for a term beginning on the 21st of April 1975. The check introduced in evidence dated 4–22–75 in the amount of $160.00 bears a notation—rent 4–22 to 5–22. This notation cannot have the effect of changing the date on which the monthly rental becomes due from the 21st day of the month to the 22nd day of the month by reason of the parol evidence rule. The lease provides that it becomes effective on the 21st day of April 1975 and terminates on the 21st day of October 1975. It provides that the rent shall be $160.00 per calendar month, payable in advance on or before the 21st day of the month.

There is a letter from the Aztex Engineering Company dated May 14, 1975 directed to the manager of the Willow Valley Apartments notifying them that Whorton Johnson would be transferring from Houston to Carrizzo Springs, Texas on May 23, 1975. Johnson testified that he had received a call from his office indicating that he was being transferred and that a letter was on its way to him since the company manager did not know the address of the apartment manager. He testified that he received the letter the next morning and took it over to Mrs. Foster's office. She was gone and he taped it to the door. He testified that he received a reply from Mrs. Foster the next morning which was taped to his door. This letter was introduced into evidence and bears the date May 16, 1975. Mr. Johnson also testified that he moved out of the apartment three or four days after receiving the letter from Mrs. Foster. Mr. Johnson gave no other notice of his intention to terminate the lease. This evidence establishes that the required seven days notice of termination was properly given.

The letter dated May 16, 1975 which was taped to the plaintiff's door was signed "Willow Valley Apartment, Jessie Foster,

Manager" and was addressed to "Mrs. Hunt". Mrs. Hunt signed (as office manager) the letter from Aztex Engineering to Willow Valley Apartments giving notice that Mr. Johnson was being transferred.

Section 3(a) of Article 5236e, supra provides that in the event actual cause exists for retaining all or any portion of the security deposit, the landlord shall return to the tenant the balance of the security deposit, if any, together with a written description and itemized list of all deductions. Such deductions are limited by this section to damages and charges for which the tenant is legally liable under the rental agreement or as a result of breaching the rental agreement. It places the burden of proving the reasonableness of such damage or charges on the landlord.

Section 4(a) of Article 5236e, supra provides that a landlord who in bad faith retains a security deposit in violation of this act is liable for $100.00 plus double the amount of that portion of the deposit which was wrongfully withheld from the tenant, together with reasonable attorney's fees in a lawsuit to recover the security deposit.

Section 4(b) provides that a landlord who in bad faith fails to provide a description and itemized list of damages and charges pursuant to the requirements of the act, forfeits all rights to withhold any portion of the security deposit.

Section 4(c) provides that in any court action brought by a tenant under this Act the landlord bears the burden of proving that his retention of the security deposit or any portion thereof was reasonable. It also provides that failure to return a security deposit in 30 days or failure to provide a written description and itemization of deductions within 30 days is "prima facie evidence and a presumption that" the landlord acted in bad faith.

With respect to the second lease the jury found that the retention of the security deposit by the Willow Valley Apartments was done in bad faith. The trial court submitted a definition of the term "bad faith" as being the opposite of "good faith", generally implying or involving an actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. There is evidence that the defendants refused to fulfill their contractual obligation to return the security deposit prompted not by an honest mistake as to their right or duty but by an interested motive.

The apartment manager's letter to Aztex Engineering stated his interpretation of the rental contract as requiring a letter from Aztex Engineering to be furnished him upon Mr. Johnson's "move in" stating that he was subject to transfer and would give one week's written notice upon his being transferred. The letter then stated that they had received no such letter from Aztex Engineering and that Mr. Johnson had not given a written notice of his intention to move and that for these reasons it would be impossible to return Mr. Johnson's deposit. The letter further stated that the lease was for six months and that Johnson was obligated to remain for the full term. The letter stated that it was the company's policy to enforce the lease agreement and that it was legally and morally committed to institute legal action for its damage "as well as credit action with the Apartment Association and the Credit Bureau." The manager then suggested that Johnson could "buy out" of his lease for 80% of one full month's rent.

Subsequently on July 3, 1975, more than 30 days after Mr. Johnson had moved out of the apartment, he was sent a letter stating that the apartment was left very dirty and that a maid service had been employed to clean it at a cost of $20.00. The letter continues:

"This left a balance of $30.00 refundable on your deposit, however, we found that you had resided in another of our projects during the month of April of last year. It appears to us from the two applications that you visit Houston anually and use apartments to avoid motel bills. In checking we also found a balance of 12

days rent was owing from your stay at the Shibui Apartments from April 10, 1974 to your move out date of May 20, 1974. You had paid rent through May 8, 1974 leaving a balance of $51.00 in rent due."

"After giving you credit for your deposit refund of $30.00 we find you still owe us a balance of $21.00. Please make your check for $21.00 payable to the Shibui Apartments . . . ."

A copy of this letter was sent to Mr. Allen Narmore, Vice President Houston Apartment Association. At the trial of this case the defendant stipulated that no rental was due to it from Mr. Johnson. No evidence was introduced at the trial of the case to prove the reasonableness of the damages or charges made by the landlord and claimed as deductions from the security deposit.

■ With regard to the second lease the landlord failed to return the security deposit in 30 days and failed to provide a written description and itemization of deductions within the 30 days after the termination of the lease. These facts constituted prima facie evidence that the landlord acted in bad faith. *Wilson v. O'Connor*, 555 S.W.2d 776 (Tex.Civ.App.—Dallas 1977, no writ history). The content of the letters strengthened the presumption of bad faith.

■ The jury refused to find that the defendant and the plaintiff intended for the plaintiff to supply a letter from Aztex Engineering Company as part of the lease contract before moving into # 27 of the Willow Valley Apartments. The provision requiring a 30 day written notice to be given the landlord prior to date of termination of the lease agreement was eliminated from the April 21, 1975 lease. The handwritten special provision merely provided for 7 days notice. The balance of the provision is ambiguous but a reasonable interpretation of the writing construed in connection with paragraph 17, which it purports to amend, is that the resident is entitled to terminate the contract by furnishing the owner the letter from his employer stating that the employer intends to transfer the tenant out of the city together with 7 days notice of the tenant's intention to terminate the lease. The tenant substantially complied with this provision by delivering to the manager of the apartment complex the letter from his employer. This letter contained the date on which he was to be transferred and was received by the apartment manager 7 days prior to the date on which the next rental payment became due. The court did not err in rendering judgment for the return of this security deposit, together with the statutory penalties and attorney's fee.

The jury refused to find that the owner retained the security deposit under the 1974 lease in bad faith. The plaintiff was allowed a recovery of the $50.00 security deposit. Mr. Johnson did not give a proper notice of his intention to terminate that lease within 30 days from the date that he moved out of the apartment. He received a letter from the manager stating that the owner would be unable to refund the deposit because Johnson did not live out the term of the lease and did not give proper notice. Prior to the date on which Johnson moved out of his apartment, the apartment had been leased to another tenant. This tenant moved in on the same date that Johnson moved out. The jury found that there was no loss of rentals, no owner's effort, no inconvenience, and no administrative costs incurred as a result of plaintiff vacating premises at the Shibui Apartments. The jury also found that the owner accepted a surrender of the premises and waived the right to enforce the rental contract. See, *Dean v. Lacey*, 437 S.W.2d 433 (Tex.Civ. App.—Beaumont 1969, no writ).

■ Article 5236e, supra, recognizes the right of the landlord if authorized by a rental contract, to retain all or a part of the security deposit where the tenant fails to give the proper advance notice of surrender required by the rental agreement. We construe Section 3(a) of that Act as requiring, in a suit by the tenant to recover the security deposit, the landlord to prove on the trial that the tenant is legally liable under the

rental agreement or as a result of breaching the rental agreement for damages or charges equal to or in excess of the security deposit or the amount thereof retained by the landlord. This section further requires the landlord to prove at the trial that the damages or charges by reason of which the security deposit or portion thereof is retained are reasonable.

 This construction of the statute comports with settled Texas law that penalty clauses in contracts will not be enforced. "The right of competent parties to make their own bargains is not unlimited. The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained. By the operation of that rule a party generally should be awarded neither less nor more than his actual damages. A party has no right to have a court enforce a stipulation which violates the principle underlying that rule. In those cases in which courts enforce stipulations of the parties as a measure of damages for the breach of covenants, the principle of just compensation is not abandoned and another principle substituted therefor. What courts really do in those cases is to permit the parties to estimate in advance the amount of damages, provided they adhere to the principle of just compensation. . . ." *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484 (1952).

When the rule of *Stewart v. Basey* is applied to the provision in the rental contract providing for forfeiture of the security deposit, it seems clear that the provision is a penalty clause. The contract reserves to the owner his cause of action for such damages as he may be able to prove and also permits him to retain the security deposit. It does not appear that the damage which might accrue from a breach of the contract by the tenant would be difficult to ascertain. As a consequence under the applicable decisions the owner would be unable to forfeit the security deposit in the absence of proof of actual damage. *Langever v. R. G. Smith & Co.*, 278 S.W. 178 (Tex.Comm.App.1925, judg. adopted).

There was no evidence introduced at this trial to show that the landlord suffered any damage by reason of Johnson's abandonment of the leased premises. The rental agreement authorizes the landlord to retain the entire deposit in the event the tenant vacates the apartment or terminates the lease prior to the end of its term. While the landlord was entitled to retain the security deposit under the terms of the lease, he was required at the trial to prove the reasonableness of his action in doing so. No such issue was submitted or raised by the evidence in this case. The issue was waived. The trial court did not err in entering a judgment requiring the defendant to return the security deposit made in connection with the 1974 rental agreement. *Reintsma v. Greater Austin Apartment Maintenance*, 549 S.W.2d 434 (Tex.Civ.App. —Austin 1977, writ dism'd).

The judgment is affirmed.