Opinion issued June 17, 2004 










In The
Court of Appeals
For The 
First District of Texas




NO. 01-03-00008-CV




 PAUL JORDAN, Appellant

V.

JAMES SCHWING and CHRISTY SCHWING, Appellees




On Appeal from County Court at Law No. 3
 Galveston County, Texas
Trial Court Cause No. 47,939




MEMORANDUM OPINION
          Appellant, Paul Jordan, appeals the judgment of the trial court ordering that
appellees, James and Christine Schwing, recover $1,350.00, the amount of the
Schwings’ security deposit on a home that they rented from Jordan, plus interest and
costs. We determine (1) whether the trial court erred by concluding that no lease
agreement existed and by excluding evidence concerning the validity of the lease
agreement; (2) whether the trial court erred by ruling that the Schwings were entitled
to recover a security deposit; (3) whether the trial court erred by finding that the
Schwings paid a security deposit or by finding and concluding that Jordan failed to
return and the security deposit timely; (4) whether the trial court erred by finding and
concluding that Jordan was required to send an itemized list of deductions and that
he failed to do so; and (5) whether the trial court erred by not allowing Jordan to
present his defenses of default and breach of contract, by not allowing him to present
his evidence of damages fully, and by not finding that Jordan’s damages were greater
than the amount of the security deposit. We affirm.
Background
          On September 10, 1999, the Schwings filled out and signed two separate
application deposit agreements pertaining to the rental of Jordan’s home in
Friendswood. The two agreements had divergent terms with regard to the charges for
late fees, the amount of security deposit, and certain special provisions. Neither
agreement was signed by Jordan. Four days later, the Schwings signed a lease
agreeing to rent Jordan’s house from October 1, 1999 to September 30, 2000 at a
monthly rent of $1,350. The Schwings filled in several blanks on the lease
agreement, including the blanks provided in the provisions for late charges and
returned checks. Jordan also failed to sign that document. 
          On September 17, 1999, the Schwings sent a check for the security deposit in
the amount of $1,350, as specified in the September 14 lease agreement, to
Alternative Realty, a company assisting Jordan in renting his house. ERA Southbelt
was the Schwings’ realtor. Although Jordan still had not signed the lease agreement,
the Schwings received a key for the house from one of the realty companies and
moved in on September 28. 
          On October 5, the Schwings received another lease agreement identical to the
one that they had previously signed, except that many of the blanks that they had
filled in with handwritten terms in the first lease agreement were now filled in with
typed terms. The typed terms pertaining to late charges and returned-check fees were
different from the terms that the Schwings had written in on the first lease agreement
that they signed. The Schwings signed this second lease agreement, but Jordan did
not sign it.
          The Schwings continued to live in the house and to pay rent as stated in the
lease agreements. The rent check for December 1999 was not accepted due to
insufficient funds. Jordan sent letters notifying the Schwings that they were in
default on the lease agreement and requesting payment of rent and late fees. On
January 5, 2000, Jordan offered the Schwings a third lease agreement. This
agreement had changes to the effective dates and the rent due date and had a note
indicating that if the Schwings agreed with the modifications, the realtors could
provide a new lease with the modifications. The Schwings did not agree to the new
terms or sign the new lease as modified. They continued to live in the house and to
pay rent. 
          On July 7, 2000, the Schwings sent a letter to Jordan, notifying him that they
intended to move out of the house in August, and they provided him with a
forwarding address in Louisiana where he could send the security deposit. The
Schwings moved out of the house on July 28. They paid rent through August 7, 2000,
but did not pay late fees accrued up to that point because the parties could not agree
on an amount. 
          The Schwings picked up the last of their belongings from the house on August
12, and the parties did a walk-through of the house to check for damages. Jordan sent
a letter to the Schwings on August 30, requesting that they return the house key. The
Schwings sent a reply letter on September 8, claiming that Jordan had told them that
he was not worried about the key and demanding a refund of the security deposit. 
          By September 4, 2000, Jordan had rented the house to new tenants, even
though the Schwings had not yet returned their key to the house. On September 9,
the Schwings mailed the house key to Jordan by certified mail, return receipt
requested. Jordan picked up the key on September 23 and sent an itemized list of
damages to the Schwings on October 16 by certified mail. The letter was unclaimed.
          The Schwings filed a lawsuit for payment of the withheld security deposit,
which suit was heard in Galveston County Justice Court, Precinct 8.


 The trial court
ordered that Jordan pay the tenants $1,000, plus interest and costs. Jordan appealed
the judgment to Galveston County Court at Law No. 3, and the court held a trial de
novo. That court likewise found in favor of the Schwings and filed findings of fact
and conclusions of law on October 14, 2002.


 Jordan now appeals.
Standard of Review
          After a bench trial, factual sufficiency challenges to the trial court’s findings
of fact are reviewable under the same standards that are applied when reviewing the
evidence supporting a jury’s verdict. McDermott v. Cronin, 31 S.W.3d 617, 623
(Tex. App.—Houston [1st Dist.] 2000, no pet.). In reviewing Jordan’s factual-sufficiency challenges on which the Schwings had the burden of proof, we examine
all of the evidence in the record, including any evidence contrary to the judgment, to
determine if the challenged finding is so weak as to be clearly wrong and manifestly
unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In reviewing Jordan’s
challenge of the factual sufficiency of the evidence to support a finding on which he
had the burden of proof, Jordan must show that the adverse finding is against the
great weight and preponderance of the evidence. See Croucher v. Croucher, 660
S.W.2d 55, 58 (Tex. 1983). In reviewing a finding upon such a challenge, we
examine the record to determine if there is some evidence to support the finding; if
so, then we determine, in light of the entire record, whether the adverse finding is so
contrary to the overwhelming weight and preponderance of the evidence as to be
clearly wrong and manifestly unjust, or whether the great preponderance of the
evidence supports its non-existence. See Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241 (Tex. 2001). 
          The trial court’s conclusions of law are not binding on this Court and are
reviewed de novo. Eller Media Co. v. City of Houston, 101 S.W.3d 668, 674 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied). Although we may not review
conclusions of law for factual insufficiency, we may review the trial court’s legal
conclusions drawn from the facts to determine their correctness. See BMC Software
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). When the findings of
fact are sufficient to support the judgment, this Court must uphold the judgment on
any theory applicable to the case, even though some or all of the conclusions of law
are erroneous. De Benavides v. Warren, 674 S.W.2d 353, 363 (Tex. App.—San
Antonio 1984, no writ).
Existence of Lease Agreement
          In issues three and four, Jordan argues that the trial court erred in disallowing
his testimony concerning the validity of the two written lease agreements that were
already in evidence. In issues two and seven, Jordan argues that the trial court erred
in its findings and conclusions regarding whether there was a valid “leasing
agreement.”


 Specifically, Jordan asserts that there were valid written lease
agreements containing procedures for the return of the security deposit.



          We do not need to determine whether the trial court erred in its findings and
conclusions regarding the validity of any “leasing agreement” or the court’s exclusion
of evidence concerning the written lease agreements’ validity: even assuming that
Jordan is correct that he undisputedly showed that valid written lease agreements
existed, he failed to comply with the procedures outlined in those agreements in any
way that would render the judgment incorrect.
          The Texas Property Code requires the landlord under a lease to provide either
the security deposit or a written description and itemized list of deductions to the
tenant on or before the 30th day after the date that the tenant surrenders the premises,
unless the terms of the written or oral lease agreement provide otherwise. See Tex.
Prop. Code Ann. § 92.103(a) (Vernon Supp. 2004); Thrift v. Johnson, 561 S.W.2d
864, 868 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ) (noting that landlord
required to provide itemized list of deductions within 30 days of lease termination). 
Surrender is defined as giving up the tenancy to the landlord so that the tenancy and
the rights or interests of the parties thereunder are extinguished by mutual agreement. 
See Four Bros. Boat Works, Inc. v. S & SF, Inc., 55 S.W.3d 12, 16 (Tex.
App.—Houston [1st Dist.] 2001, no pet.) (citing Arrington v. Loveless, 486 S.W.2d
604, 606 (Tex. Civ. App.—Fort Worth 1972, no writ). Furthermore, a surrender by
operation of law may result by the tenant’s abandonment of the premises and by the
landlord’s re-entry. See Cavalcade Oil Corp. v. Samuel, 746 S.W.2d 842, 844 (Tex.
App.—El Paso 1988, writ denied); see also Ingleside Prop., Inc. v. Redfish Bay
Terminal, 791 S.W.2d 217, 219 (Tex. App.—Corpus Christi 1990, no writ) (holding
that, if tenant wrongfully abandons leased premises and defaults in rental obligations
under lease, and landlord re-enters or re-lets for own benefit, tenant’s obligations will
be considered terminated by operation of law).
          Here, if the trial court correctly found and concluded that there was no written
lease agreement—and thus, implicitly, that there was no written variation of Jordan’s
statutory duties concerning the security deposit—then the trial court was also correct
in its implied conclusion that Jordan could not prevail as a matter of law. This result
obtains because the Schwings moved out of Jordan’s house and new tenants moved
in by September 4, 2000. As a result, if (as the trial court found and concluded) there
was no written lease agreement that altered the statutory terms of surrender, Jordan
could not prevail as a matter of law because it is undisputed that he rented the house
to new tenants on September 4 and did not send the written description of itemized
deductions until October 16, well past the 30-day deadline.
          If, alternatively, the trial court erred in finding and concluding that there was
no written lease agreement, Jordan still cannot prevail. In support of his appellate
challenges, Jordan relies on the identical surrender terms in the two written lease
agreements signed by the Schwings, but not signed by him:
Notice: The Texas Property Code does not obligate the
landlord to return or account for the security deposit until
30 days after the Tenant surrenders the Property (vacating
and returning all keys and access devices) and gives
Landlord a written statement of Tenant’s forwarding
address.

(Emphasis added.) Jordan argues that, under this provision of both written leases, he
sent the itemized list within 30 days of surrender because (1) the Schwings kept a key
to the house until September before mailing it to him, (2) the key was not picked up
from the post office until September 23, and (3) he sent the itemized list to the
Schwings on October 16, which was within 30 days after the key was picked up. 
However, Jordan testified that the Schwings sent the key by certified mail on
September 9. According to the lease, the premises are considered “surrendered”
when all keys are returned. The Schwings essentially surrendered the premises by
mailing the key on September 9 because the act of mailing foreclosed any future
rights of the tenants in Jordan’s house. Accordingly, the evidence undisputedly
shows that Jordan failed to comply with the terms of the written lease agreements on
which his appellate challenges depend.
          Therefore, it is immaterial whether the trial court erred by finding and
concluding that a written lease agreement did not exist or by precluding Jordan from
presenting evidence concerning why the written lease agreements were valid or how
they were breached. Even if the trial court erred in entering this finding of fact and
conclusion of law regarding the existence of a written lease agreement, that error does
not warrant a reversal because the judgment was otherwise correct. See Vaughn v.
DAP Fin. Servs., Inc., 982 S.W.2d 1, 6 (Tex. App.—Houston [1st Dist.] 1997, no
writ). Reversal would have been proper only if a different verdict would have been
rendered but for the error. Id.
          Accordingly, we overrule issues two, three, four, and seven. 
Security Deposit
          In issue one, Jordan argues that, based on the trial court’s Finding of Fact No.
1 and Conclusion of Law No. 1, the trial court erred in ruling that the Schwings were
entitled to recover a security deposit.


 The trial court’s Finding of Fact No. 1 was that
“Plaintiff/Tenant and Defendant/Landlord attempted to enter into a leasing agreement
. . . but failed to do so.” This finding is in support of the trial court’s first conclusion
of law that “[t]he parties’ failure to enter into a written lease agreement resulted in the
Plaintiff/Tenant occupying the property on a month to month basis.”
          Jordan relies on Stool v. Mezayek for the proposition that if no rental agreement
exists, there can be no recovery of a security deposit. See Stool v. Mezayek, 646
S.W.2d 318, 320 (Tex. App.—Dallas 1983, no writ). However, in Mezayek, the only
evidence of an agreement was that the parties negotiated in contemplation of a written
lease agreement, which Mezayek ultimately declined to sign. See id. at 318. 
Therefore, Mezayek cannot control under the circumstances in the present case, when
it is uncontested that the Schwings actually moved in and Jordan accepted rental
payments and made repairs to the premises. 
          Under the Texas Property Code, “[a] security deposit is an advance of money
. . . intended primarily to secure performance under a lease of a dwelling that has been
entered into by a landlord and a tenant.” Tex. Prop. Code Ann. § 92.102 (Vernon
Supp. 2004). This statute does not require that the lease agreement be in any specific
form; it requires only that there be “a lease of a dwelling.” See id. A lease may be
created by conduct expressing consent to the lessee’s possession. City of Fort Worth
v. Barlow, 313 S.W.2d 906, 915 (Tex. Civ. App.—Fort Worth 1958, writ ref’d n.r.e.). 
The conduct expressing consent may consist merely of a failure to object to the
presence of one who has entered without the lessor’s permission. Id. The
uncontroverted evidence that the Schwings moved into the house for 10 months and
that Jordan collected rent and made repairs is sufficient to show that Jordan and the
Schwings had formed a lease by their conduct. See id.; City of Tyler v. Ingram, 164
S.W.2d 516, 520 (Tex. 1942) (stating that occupant of real estate may be tenant,
though there appears to be no written or oral contract between tenant and owner of
real estate). Accordingly, the trial court did not err in ruling that the security deposit
be returned. 
          We overrule issue one.
          In issues eight and nine, also relating to the security deposit, Jordan asserts that
the evidence supporting Findings of Fact Nos. 2 and 6 is factually insufficient and
that Conclusion of Law No. 3 is incorrect as a matter of law. Those findings and
conclusions are:
Findings of Fact
. . . .
2. Plaintiff/Tenant paid Defendant/Landlord, a security deposit of
$1,350.00 and submitted proof thereof.
. . . .
6. Defendant/Landlord failed to return the security deposit
of $1,350.00.
. . . .
                    Conclusion of Law
                    . . . . 
                    3. Defendant/Landlord failed to timely return the security deposit.
                    . . . .

          Under the Texas Property Code, a tenant must meet several requirements to
show that he is entitled to receive his security deposit or an itemized list of
deductions. The tenant must show that (1) he advanced money to secure performance
under a lease of a dwelling, (2) he surrendered the premises, and (3) he provided a
written statement containing his forwarding address. See Tex. Prop. Code Ann. §§
92.102, 92.103, 92.107 (Vernon Supp. 2004). In addition, the landlord must refund
the security deposit on or before the 30th day after the tenant surrenders the premises. 
See id. § 92.103(a). Because the Schwings had the burden of proof on the challenged
findings, we will overturn them only if the evidence supporting them is so weak as
to be clearly wrong and manifestly unjust. Cain, 709 S.W.2d at 176.
          James Schwing testified that he wrote out a check to Alternative Realty in the
amount of $1,350 as a security deposit on the landlord’s house. Schwing presented
the check at trial, and it was entered as evidence. Jordan testified that he did not
receive the security deposit. He stated that the realty company kept the check. The
trial court then asked Jordan if Alternative Realty worked for him in leasing the
property, to which he replied, “We had an agreement if they delivered me—we had
a verbal agreement, a friend of mine from church and I, there is no contract between
us, that if they found me an acceptable tenant and I had a signed lease, I gave him my
form.” Although Jordan testified that the deposit was given to the realtors, Jordan
also testified that there was a security deposit and that he had a record of it at home. 
Under these circumstances, we hold that the evidence is factually sufficient to show
that the Schwings paid the security deposit.
          In attacking the finding and conclusion that Jordan failed to return the security
deposit timely, Jordan also argues that he was not required to return the security
deposit under Texas Property Code Section 92.104.


 See Tex. Prop. Code Ann. §
92.104 (Vernon 1995).     He contends that the evidence showed that the deductions
were justified and accounted for, even though it was not necessary because the
Schwings owed rent when they moved out.
          It is clear that, even when a landlord is justified in retaining some or all of the
security deposit, he still must send back any of the deposit remaining after deductions
have been made, and he must send an itemized list of those deductions unless the
tenant owes rent and there is no controversy concerning the amount owed. During
Jordan’s testimony as to damages, he stated that
[Schwing] refused to pay the late fees, as he continues to
do. This is the receipt my wife gave him for cash. I want
you to notice, your Honor, that it doesn’t say paid in full
because it was a bone of contention between both of us on
late fees and the NSF and the 25-dollar initial late fee
that—we just left that because we couldn’t agree on a
receipt.

On cross-examination, Jordan asked Schwing the following question:
Mr. Jordan:Mr. Schwing, do you believe you owe any rent—any
late fees at all according to the Texas Property
Code?
 
Mr. Schwing: No, sir.

          Later in his testimony, Jordan stated that Schwing owed him at least $2,160 in 
late fees. Schwing also sent a letter to Jordan, stating that he would pay rent through
August 7 to avoid breaching the parties’ month-to-month rental agreement. Jordan
also sent a letter to the Schwings, stating that they owed $1,260 dollars in outstanding
rent from August 8 to September 4, 2000. It is obvious from Jordan’s own testimony
and from the remaining evidence cited that there was a controversy concerning the
amount of rent owed. As a result, the evidence was not factually insufficient to
uphold the trial court’s finding that Jordan was required to send the security deposit
and failed to do so. The trial court also did not err in its conclusion that Jordan failed
to return the security deposit timely. 
          Accordingly, we overrule issues eight and nine.
Itemized List of Deductions
          In issues 10, 11, and 12, Jordan challenges the trial court’s finding and
conclusion that an itemized list of deductions was required, but was not sent.
Conclusion of Law No. 4 stated that “Defendant/Landlord was required to give
Plaintiff/Tenant a description and/or itemized list of deductions and failed to do so.”
Although this statement was called a conclusion of law, it is actually a factual finding.
          Jordan had the burden to prove that the Schwings were legally liable for the
amount of the security deposit that Jordan retained. See Thrift, 561 S.W.2d at 868-69. 
Because Jordan had the burden of proof, he must show that the adverse finding is
against the great weight and preponderance of the evidence. Croucher, 660 S.W.2d
at 58. 
 
          Jordan argues that he should not have been required to send an itemized list of
deductions. Under Property Code section 92.104, as discussed above with respect to
the return of security deposits, an itemized list of deductions must be sent, unless the
tenant owes rent when he surrenders the premises and there is no controversy as to
the amount owed. See Tex. Prop. Code Ann. § 92.104(c). Because we have
determined that there was a controversy as to amount owed, the trial court did not err
in finding or concluding that Jordan was required to send a list of itemized
deductions.
          Next, Jordan asserts that the trial court erred in its finding and conclusion that
he did not send an itemized list of deductions. Jordan’s uncontroverted testimony
was that he sent the list of deductions on October 16, 2000. The list of deductions
was also entered into evidence. Therefore, the court’s finding that a list of deductions
was not sent was against the great weight and preponderance of the evidence. 
          However, while announcing its ruling to the parties at trial, the court noted that
“the accounting or a description of the damage and the amount happened way after
the date the request was made that that be done. . . .” The trial court clearly
concluded that the itemization was sent, but not timely. This conclusion was stated
in Conclusion of Law No. 5, which is not challenged on appeal.


 Because the
judgment was proper on some legal theory, the trial court’s incorrect finding of fact
or conclusion of law concerning the sending of the list does not require reversal. See
Vaughn, 982 S.W.2d at 6.
          We overrule issues 10, 11, and 12.
Damages and Defenses
          In issues five, six, 13, and 14, Jordan asserts that the trial court erred by not
allowing him to present his defenses of default and breach of contract and by not
allowing him to present his evidence of damages fully. He also asserts that there was
sufficient evidence to find that the damages were greater than the amount of the
security deposit.
          Even if a landlord proves sufficient damages to withhold some or all of the
security deposit due to a breach of a lease or a default on a lease, he is required to
send an itemized list of deductions and the remainder of the deposit, if any, within 30
days of a tenant’s surrender of the premises. See Tex. Prop. Code Ann. §§
92.103(a), 92.104. Because the trial court correctly found and concluded that Jordan
was required to send the deposit or a list of deductions, but failed to do so timely, the
Schwings’ alleged default or breach, and Jordan’s damages, cannot affect the
requirement to return the security deposit or the itemized list. See id. Consequently,
any finding or conclusion concerning the Schwings’ alleged default or breach of
contract and Jordan’s damages is immaterial.
          We overrule issues five, six, 13, and 14.Conclusion
          We affirm the judgment of the trial court. 



                                                             Tim Taft
                                                             Justice
Panel consists of Justices Taft, Keyes, and Bland.